2026 IL App (4th) 250384

NO. 4-25-0384

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 23, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* DETENTION OF GREGORY MORRIS | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cass County |
| Petitioner-Appellee, | ) | No. 98MR17 |
| v. | ) | |
| Gregory Morris, | ) | Honorable |
| Respondent-Appellant). | ) | Timothy J. Wessel, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1 In 1999, a jury adjudicated respondent, Gregory Morris, a sexually violent person (SVP), as defined by section 5(f) of the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/5(f) (West 1998)). Following the verdict, the trial court committed respondent to the custody of the Illinois Department of Human Services (DHS) until such time as he was no longer sexually violent. Thereafter, respondent was annually reexamined by an evaluator as required by the Act. See *id.* § 55.

¶ 2 In November 2023, the State filed a motion for a finding of no probable cause and attached thereto a new reexamination report that opined respondent remained an SVP in need of secure care and treatment. In January 2024, respondent filed a motion for an independent evaluation, and in February 2024, the trial court granted the respondent's motion. In June 2024,

the independent evaluator filed a report, opining that respondent should be placed on conditional release.

¶ 3         In September 2024, the trial court denied the State's motion for a finding of no probable cause and set the case for an evidentiary hearing. In December 2024, the court conducted the evidentiary hearing at which both evaluators testified. In January 2025, the court entered a written order, finding that the State had proved by clear and convincing evidence that respondent had not made sufficient progress in treatment to be conditionally released.

¶ 4         In November 2024, the State filed an amended motion for a finding of no probable cause and attached thereto the annual reexamination report for 2024 that again opined that responded remained an SVP in need of secure care and treatment. In January 2025, respondent filed a motion for an independent evaluation.

¶ 5         In February 2025, the trial court conducted a hearing on the motions. After hearing arguments from the parties and taking judicial notice of the testimony presented at the December 2024 evidentiary hearing, the court denied respondent's motion for an independent evaluation and granted the State's motion, finding that no probable cause existed to warrant an evidentiary hearing.

¶ 6         Respondent appeals, arguing only that the trial court erred by finding no probable cause for an evidentiary hearing because (1) the court applied the wrong standard for determining a change in circumstances by considering the last review period instead of looking at respondent's circumstances since being committed and (2) respondent demonstrated probable cause that he was no longer substantially likely to commit further offenses if released.

¶ 7         We disagree and affirm.

¶ 8                                  I. BACKGROUND

¶ 9                          A. The Procedural History

¶ 10          In 1987, respondent was convicted of the aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14) of two women in two separate incidents and was sentenced to six years in prison for each conviction, with the sentences to run concurrently. In 1994, respondent was convicted of aggravated criminal sexual assault (720 ILCS 5/12-14 (West 1992)), and the trial court sentenced him to six years in prison.

¶ 11          In 1999, a jury adjudicated respondent an SVP, as defined by section 5(f) of the Act (725 ILCS 207/5(f) (West 1998)). Following that verdict, the trial court committed respondent to the care, custody, and control of DHS until such time as he was no longer an SVP. Respondent appealed, and this court affirmed. *In re Detention of Morris*, 316 Ill. App. 3d 1307 (2000) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12          Since respondent's initial commitment, he has been reexamined periodically, as required by the Act. See 725 ILCS 207/55 (West 1998). Respondent has repeatedly been found to remain an SVP and has not been conditionally released. See, *e.g.*, *In re Detention of Morris*, 2021 IL App (4th) 190750-U (addressing respondent's 2018 petition for discharge and affirming (1) the jury's finding that he remained an SVP and (2) the trial court's denying respondent conditional release).

¶ 13           B. The 2023 Reexamination and Conditional Release Proceedings

¶ 14                          1. *The November 2023 Reexamination Report*

¶ 15          In November 2023, Dr. Lindsay Dees submitted a reexamination report that concluded (1) respondent had not made sufficient progress in treatment to be conditionally released and (2) his condition had not changed and he remained an SVP. Dees's report relied on prior reexamination reports, respondent's treatment history and progress notes, actuarial risk

assessment tools, and an interview with respondent. The report set forth respondent's criminal history, including his history of sex offenses and uncharged conduct. See *id.* ¶¶ 26-31 (detailing respondent's criminal history). Dees diagnosed respondent with sexual sadism disorder, in a controlled environment, and narcissistic personality disorder, with antisocial traits, which are both qualifying mental disorders under the Act.

¶ 16    Dees explained she used three actuarial risk assessment tools to determine respondent's risk to reoffend: (1) the Static-99R, (2) the Static-2002R, and (3) the STABLE-2007. On the Static-99R, Dees scored respondent a 5, placing him in the "above average risk" category, with a recidivism rate 2.7 times greater than an average sex offender. On the Static-2002R, Dees scored respondent a 7, placing him in the "well above average risk" category, meaning he was 3.6 times more likely to recidivate than an average sex offender. (Dees explained that recidivism in this context meant being charged or convicted of a sex offense and not the mere commission of an offense.)

¶ 17    Dees used the STABLE-2007 to evaluate dynamic risk factors and help predict recidivism. Dees scored respondent a total of 17 out of 24 possible points, placing him in the 95th percentile of sex offenders. Dees also identified 12 dynamic risk factors that increased respondent's risk to reoffend, including (1) hostility toward women, (2) general social rejection, (3) lack of concern for others, (4) impulsive acts, (5) poor problem solving skills, (6) negative emotionality, (7) sex as coping, and (8) deviant sexual preference, among others.

¶ 18    Regarding protective factors, Dees considered respondent's sex offender treatment progress, age, and medical conditions. Respondent was in phase III of the five-phase treatment program; however, he did "not yet have knowledge of his sexual assault cycle which will provide insight into his sexual offending history, nor [had] he established interventions for sexual deviance

which is typically completed through development of a relapse prevention plan." Dees wrote, "[Respondent's] motivation to change is unclear and this point. While he continues to attend treatment, he stated he does so to 'make the time pass.' And while he stated he can 'spit the lick,' he did not display any level of depth or knowledge regarding his treatment progress." Given this context, Dees did not consider respondent's treatment progress to be a protective factor mitigating his risk of reoffending.

¶ 19    Regarding age, Dees noted that respondent was 60 years old and available research showed that (1) "fewer than five percent of sex offenders have been detected committing a sexual offense over the age of 60" and (2) the "predicted recidivism rate" for sexual offenders aged 70 or older is "virtually zero." Dees considered respondent's advanced age to be a protective factor mitigating his risk of reoffending.

¶ 20    Respondent did not have any medical or health issues that lowered his risk to reoffend.

¶ 21    Considering all the information, Dees concluded, to a reasonable degree of psychological certainty, respondent's condition had not significantly changed and he remained an SVP. Dees also concluded that respondent had not made sufficient progress in treatment to be conditionally released.

¶ 22    Later in November 2023, the State filed a motion for a finding of no probable cause and attached thereto Dees's 2023 reexamination report.

¶ 23    2. *The 2023 Independent Evaluation and Report*

¶ 24    In January 2024, respondent filed a motion for independent evaluation, asserting that Dees was biased and an independent evaluator was necessary for respondent to oppose the State's motion and pursue respondent's conditional release. Respondent pointed out that Dees had

previously evaluated respondent and filed a report in 2022. However, in that report, Dees scored respondent lower on the Static-99R and Static-2002R risk assessment tools than she did in her 2023 report and provided no explanation for the change.

¶ 25    In February 2024, the trial court conducted a hearing on the motions and first considered whether an independent evaluator should be appointed. After considering the parties' arguments, the court agreed that the discrepancies between the risk assessment scores without explanation was a cause for concern and believed "[it was not] going to hurt anything to appoint an independent evaluation [*sic*] from—for [respondent]." The court appointed Dr. Luis Rosell and continued the case for Rosell to complete his evaluation and report.

¶ 26    In June 2024, Rosell filed his independent evaluation report. The report stated that Rosell was requested by respondent's counsel "to determine if [respondent] would be appropriate for conditional release." The evaluation was conducted remotely in February 2024. Rosell concluded that respondent had progressed in treatment, such that he should be conditionally released. He based this opinion on respondent's (1) many years of sex offender treatment, (2) having "addressed many factors that contributed to his conduct," (3) advanced age, and (4) ability to follow rules while in secure care. Rosell's report extensively discussed research showing that recidivism rates drop significantly for offenders aged 60 and older. Rosell used the Static-99R to assess respondent's risk and scored him a 5.

¶ 27    In August 2024, the trial court conducted a hearing on the State's motion for a finding of no probable cause. The court heard the parties' arguments and considered the reexamination reports before taking the matter under advisement.

¶ 28    In September 2024, the trial court issued a written order, in which it wrote that "[d]ue to the opposite findings from the State Evaluation and the Independent Evaluation, No

Probable Cause cannot be found at this time." Accordingly, the court denied the State's motion for a finding of no probable cause and set the case for an evidentiary hearing.

¶ 29                                    3. *The Evidentiary Hearing*

¶ 30          In December 2024, the trial court conducted an evidentiary hearing to determine whether respondent should be conditionally released or whether the State could prove by clear and convincing evidence that he had not progressed in treatment to the point where he is no longer substantially probable to engage in acts of sexual violence if placed on conditional release.

¶ 31          The parties stipulated that the evaluators were both experts and requested the trial court to consider their evaluation reports. Thereafter, both experts testified consistently with their reports.

¶ 32                                    a. Lindsay Dees

¶ 33          Dr. Dees testified consistently with her November 2023 reexamination report and opined that respondent's condition had not changed significantly enough and he remained an SVP. Dees explained her use of the Static-99R, Static-2002R, and STABLE-2007, including the reason for a change in the scores from her 2022 report. Dees had mistakenly scored respondent at his current age (59) rather than the mandated age at the time of his release from his index offense (33). Dees also discovered, upon reexamining the historical evidence, that prior examiners gave him a point for not living with a significant other for two years, but the evidence did not conclusively support that finding. Accordingly, she removed that point in 2023 as well, arriving at the Static-99R score of 5 and the Static-2002R score of 7 she detailed in her report.

¶ 34          Regarding dynamic risks—risks that tend to change with treatment and time—Dees used the STABLE-2007. Dees testified that she scored respondent a 14 out of a possible 24, which put him in the highest range for reoffending.

¶ 35        Dees then testified about potential protective factors and explained why she viewed age as a protective factor but not respondent's progress in sex offender treatment. Dees stated:

> "[E]ven though the Static didn't account for [respondent]'s age, his age still is considered to be a protective factor. So as individuals get older, it is found that they do tend to recidivate less, and so I did take that into consideration that [respondent] is above the age of 60."

¶ 36        Regarding progress in treatment, Dees testified that respondent had not progressed sufficiently to be conditionally released. Dees described respondent's treatment to date as "wishy-washy." Dees noted that respondent still had risk factors that he needed to work on to be safe in the community. Respondent had not completed a relapse prevention plan, which provided "interventions" for the individual to help prevent him from reoffending while conditionally released. She believed the plan was important for individuals to have completed before they were released into the community. Dees also noted that respondent did not have any close friends or family in his life who could act as a support system, which is very beneficial for individuals on conditional release.

¶ 37        On cross-examination, Dees agreed that respondent had been in treatment, "on or off," since 1998, had completed phase I and phase II, and was currently in phase III. Dees acknowledged that people in phase III had been conditionally released. Dees also agreed that risk of recidivism drops significantly at age 60 and is virtually zero by age 70.

¶ 38                                b. Luis Rosell

¶ 39        Dr. Rosell testified regarding the reasons for his disagreement with Dees's report and conclusion as to respondent's eligibility for conditional release. Specifically, Rosell explained that he disagreed with the way the Static-99R factored age into the assessment. In almost all cases,

evaluators use the offender's age at the time of evaluation, but "the coding rule basically states that you have to go by his age when he was released the last time, not his current age." Rosell described this as a "loophole" and expressed his belief that the scoring for respondent was wrong. Rosell acknowledged that he scored respondent a 5 in his report but insisted that the correct score, taking account of his current age, was a 3, which placed him "on the high end of the average range."

¶ 40 Rosell testified that respondent's treatment progress was the key factor in assessing his risk. Rosell asserted that individuals in phase III have been placed in the community and stated that the program in the community was "very beneficial because it allows an individual to have group and individual therapy, almost about as many hours as they would if they were still [in a detention facility]." Rosell then testified that respondent had been engaged in treatment, had many positive comments in his treatment notes, had no evidence of deviant sexual arousal, and had "overall positive behavior while he's been confined."

¶ 41 Respondent's counsel then asked Rosell what his opinion was on "whether or not [respondent] remains a sexually violent person." Rosell answered as follows:

"Well, by statute—I wasn't asked to determine whether he meets criteria or not. I thought I was asked about determining whether he is ready for conditional release. So, if that's what I'm being asked, I believe that he is ready to return to society as a conditionally released individual per the statute."

When asked why he believed respondent was ready for conditional release, Rosell answered consistent with his earlier testimony and then added that he believed respondent, like most people who turn 60, "start[ed] looking at life differently." Rosell opined that respondent realized the harm he had caused the victims, their families, and his own family. Thus, "he has a completely different

perspective than he did previously."

¶ 42 On cross-examination, Rosell explained that advanced age did not negate all dynamic risk factors when those factors "are pronounced and considered to be problematic." As an example, Rosell said that a pedophile who is caught with child pornography would have demonstrated the dynamic risk factor of deviant sexual interest such that Rosell "wouldn't overrule that because the individual is older." Rosell explained that he was not suggesting that Dees's use of dynamic risk factors was wrong but that those factors did not significantly alter the level of risk based on their Static scores. Rosell also believed that the dynamic risk factors were hard to properly apply because the evidence for them typically came from far in the past and it was difficult to say whether they still applied.

¶ 43 c. The Conclusion of the Hearing

¶ 44 At the conclusion of the witness testimony, respondent offered into evidence the experts' curricula vitae and "updated reports" from the experts containing "a handful of progress notes." The trial court admitted this evidence without objection. Respondent then requested the court to take notice of Dees's earlier reexamination reports, and the court took notice of Dees's 2022 report.

¶ 45 The trial court then took the matter under advisement to review all the documentary evidence. The court stated it was "going to make every attempt to have [its] ruling out by the end of the year." The court then stated the following: "I do know we are already on the 2024 calendar, and we need to set that for a probable cause setting." After conferring with counsel, the court "set the motion of the State of finding of probable cause for February 3rd, 2025."

¶ 46 4. *The Trial Court's January 2025 Order Denying Conditional Release*

¶ 47 In January 2025, the trial court issued a written order, in which it wrote the

following:

"This matter came before the Court for a hearing on Respondent's Petition for Conditional Release, pursuant to 725 ILCS 207/60(d), on December 2, 2024. Testimony was heard and exhibits were admitted into evidence. The Court finds and holds as follows:

On November 6, 2023, Dr. Lindsay Dees submitted a re-examination report that concluded that the Respondent had not made sufficient progress in treatment to be conditionally released. The Respondent then obtained an independent evaluation by Dr. Rosell who concluded that the Respondent had made sufficient progress to be conditionally released. The Court has read the reports submitted by both Dr. Dees and Dr. Rosell as well as listened to the testimony of each. The Court has also considered he findings and conclusions of each expert. Both doctors are undoubtedly experts and it is not unusual in this area for highly qualified professionals to reach different conclusions. The Court notes that Dr. Dees has evaluated the Respondent several times. The Respondent is only in early phase III of the treatment program at the [treatment and detention facility]. Based on the actuarial risk assessment tools used (Static 99R, Static 2002R and Stable 2007) and the dynamic risk factors, Dr. Dees testified that the Respondent's scores place him in the Well Above Average risk category. Dr. Rosell only used the Static 99R risk assessment tool but agreed that the Respondent's scores place him in the Well Above Average risk category, even though he concluded that the Respondent was ready for Conditional Release. Based upon the above findings of fact, the Court finds the testimony of Dr. Dees more credible than that of Dr. Rosell.

THE COURT HEREBY FINDS THAT, based on all of the evidence, the State has proven by clear and convincing evidence that the Respondent has NOT made sufficient progress in treatment to the point where he is no longer substantially probable to engage in acts of sexual violence if on Conditional Release.

THE COURT HEREBY FINDS THAT the Respondent's Motion for Conditional Release is DENIED and Respondent's COMMITMENT STATUS continues to be for INSTITUTIONAL CARE IN A SECURE FACILITY as previously Ordered by this Court."

¶ 48    C. The No Probable Cause Finding at Issue in This Case

¶ 49        1. *The November 2024 Reexamination Report*

¶ 50    In November 2024, Dees conducted respondent's annual reexamination and filed her report with the trial court, in which she again concluded that respondent (1) had not made sufficient progress in treatment to be considered for conditional release and (2) remained an SVP in need of institutional care in a secure facility. Dees's report was substantially similar to her 2023 report in all material respects. Dees had updated the report with new treatment progress notes and information, but she scored respondent the same on the Static-99R and Static-2002R and calculated his risk to reoffend as substantial, despite his advanced age. Regarding attitudes towards treatment, Dees noted in her report, "[Respondent]'s motivation to change continues to be unclear. While he continues to attend treatment, his motivation appears directly related to being released rather than any real desire to change."

¶ 51    In January 2025, respondent filed a motion for an independent evaluation, and the State filed a response to the motion that same day. Respondent's motion merely asserted that

Dees's 2024 reexamination report was not fair and unbiased and that without an independent examination, respondent would be "virtually incapable of rebutting the State's examination report." The State's response contended that respondent had presented no evidence of a substantial change to support his motion and nothing suggested that Dees's report was erroneous or that a new examiner would reach a different conclusion.

¶ 52                  2. *The Probable Cause Hearing*

¶ 53          On February 3, 2025, the trial court conducted a probable cause hearing, at which it also considered respondent's motion for an independent evaluation.

¶ 54          The State asked the trial court to take judicial notice of the November 2024 reexamination report, in which Dees concluded that respondent had not made sufficient progress to be released and remained an SVP. The State then noted that the court had "also heard testimony from Dr. Dees in December on the hearing where she also testified to her reasoning behind that [conclusion] and that [respondent] *** needs more progress in treatment" before he could be considered for conditional release.

¶ 55          Respondent's counsel began by acknowledging that the trial court had heard "way more evidence and testimony for [respondent] than what is typically heard by the Court when we do these annual proceedings, that being the hearing *** back in December." Counsel then addressed the 2024 report and pointed out that Dees highlighted respondent's progress in treatment and completion of "several other programs and treatments" he had completed on his objectives checklist. Respondent then noted that Rosell and Dees testified at the December 2024 hearing that people in phase III have been considered eligible for some forms of conditional release.

¶ 56          Respondent's counsel then addressed "treatment and age," acknowledging that this issue was argued in December. Respondent had been in treatment since 1998, and counsel stated

he was "over the threshold of 60 years old, Your Honor, which as the Court has learned is really that threshold age where recidivism substantially decreases, and it will continue to substantially decrease pursuant to all the findings and studies for that." Respondent's counsel asked that the trial court find probable cause and set the case for an evidentiary hearing.

¶ 57 Regarding the motion for an independent evaluation, counsel noted that he was "virtually incapable of refuting [the November 2024 reexamination] report without" hiring his own expert. Counsel asked the trial court to grant the motion "as it had previously."

¶ 58 In response, the State "ask[ed] the Court to take judicial notice of [its] written response in there stating nothing has changed since December." The State noted that respondent had just been reevaluated by Rosell last year, there had not been a change, and there was no reason for another evaluator to be appointed at this time.

¶ 59 3. *The Trial Court's Probable Cause Ruling*

¶ 60 The trial court denied respondent's motion for an independent evaluation, granted the State's motion for a finding of no probable cause, and explained its rulings as follows:

> "The Court has heard the motion of the State and the respondent. The Court's taking judicial notice of the report filed herein by Dr. Dees. Also taking judicial notice of the testimony that was heard in front of this Court last December by both Dr. Dees and Dr. Rosell, as that testimony is very applicable to the motions that were made here today.
>
> In regards to the motion for independent evaluation, at this time the Court is going to deny the respondent's motion. Last year I granted it because there [were] inconsistencies between the two reports. I heard the testimony in December and now taking into consideration the report just filed by Dr. Dees, I do not find any

- 14 -

inconsistency at this time that would make an independent evaluation necessary to establish probable cause or no probable cause, so the respondent's motion for independent evaluation is denied at this time.

I also take into consideration all the testimony and the reports given herein, and I will note that one report—this is not verbatim but more or less what it states—is that [respondent] continues to make strides in treatment but not substantial progress that would lead to conditional release. I find that that is true at this time.

I'm not here making findings that [respondent] is not making strides or not working towards his release because I believe he is, but I see nothing in this report that would support a finding of probable cause to initiate a further hearing and to possibly lead to his release at this time.

So, at this time the Court will find no probable cause, and the Court will enter that order as a final and appealable order."

¶ 61 That same day, the trial court entered a written order, which stated the following:

"This cause having come before the Court for a hearing pursuant to 725 ILCS 207/55 and 725 ILCS 207/65(b)(1) to determine whether facts exist to warrant an evidentiary hearing to determine if the Respondent is still a sexually violent person and for a hearing on the People's Motion for Finding of No Probable Cause Based Upon Review of Re-Examination Report, and makes the following finding and enters the following Order:

THE COURT HEREBY FINDS THAT, from a review of the reports dated November 6, 2024 [(we note that the date first typed in the order was November 6, 2023, but was changed by hand to say 2024)] and November 6, 2024 and filed with

the Court concerning the re-examination of Respondent, THERE IS NO PROBABLE CAUSE TO WARRANT AN EVIDENTIARY HEARING to determine whether the Respondent is still a sexually violent person pursuant to 725 ILCS 207/65(b)(2);

THE COURT HEREBY FINDS THAT the People's Motion for Finding of No Probable Cause Based Upon Review of Re-Evaluation Reports is GRANTED and Respondent's COMMITMENT STATUS continues to be for INSTITUTIONAL CARE IN A SECURE FACILITY as previously Ordered by this Court."

¶ 62    This appeal followed.

¶ 63                        II. ANALYSIS

¶ 64    Respondent appeals, arguing only that the trial court erred by finding no probable cause for an evidentiary hearing because (1) the court applied the wrong standard for determining a change in circumstances by considering the last review period instead of looking at respondent's circumstances since being committed and (2) he demonstrated probable cause that he was no longer substantially likely to commit further offenses if released.

¶ 65    We disagree and affirm.

¶ 66                A. The Applicable Law and Standard of Review

¶ 67    As we have noted, respondent does not challenge the trial court's denial of conditional release or his motion for an independent evaluation; instead, respondent argues only that the court's finding of no probable cause was incorrect, albeit by asserting two distinct grounds: (1) the court applied the wrong standard and (2) respondent presented sufficient evidence to warrant and evidentiary hearing. "The question of whether there is probable cause to believe that

- 16 -

a respondent is no longer an SVP so as to warrant an evidentiary hearing is subject to *de novo* review." *In re Commitment of Butler*, 2022 IL App (1st) 201107, ¶ 40.

¶ 68    Section 65(b)(1) of the Act addresses petitions for discharge and sets forth the following procedures a trial court must follow after periodic reexaminations:

> "If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination (or initial commitment, if there has not yet been a periodic reexamination), the condition of the committed person has so changed that he or she is no longer a sexually violent person." 725 ILCS 207/65(b)(1) (West 2024).

When, as in the present case, an SVP does not file a petition for discharge and does not waive the right to petition, "then the probable cause hearing consists only of a review of the reexamination reports and arguments on behalf of the parties." *Id.*

¶ 69    At a probable cause hearing, the respondent bears the burden of presenting "sufficient evidence to warrant an evidentiary hearing to determine whether he is 'still a sexually violent person.'" *In re Commitment of Galba*, 2017 IL App (3d) 150613, ¶ 11 (quoting *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 67). "To make that determination, the [trial] court must find that there is a plausible account that 'the committed person is *no longer* a sexually violent person.'" (Emphasis in original.) *Stanbridge*, 2012 IL 112337, ¶ 67 (quoting 725 ILCS 207/65(b)(2) (West 2008)). A respondent satisfies this standard by presenting evidence that "he no longer meets the elements for commitment in that he (1) no longer has a mental disease or (2) is no longer dangerous to others because his mental disorder no longer creates a substantial probability that he will engage in acts of sexual violence." *Galba*, 2017 IL App (3d) 150613, ¶ 11.

¶ 70    "This plausible evidence can be (1) a change in the respondent himself, (2) a change in professional knowledge or the methods used to evaluate a person's mental disorder or risk of reoffending, or (3) a change in the applicable legal definitions." *In re Commitment of Canada*, 2018 IL App (4th) 170511, ¶ 33 (citing *Stanbridge*, 2012 IL 112337, ¶¶ 72).

¶ 71    "The existence of probable cause is a question of law and becomes a question of fact only if the underlying facts are in dispute. [Citation.] When no testimony is presented and the trial court is merely reviewing documentary evidence, our review is *de novo*." *Id.* ¶ 36.

¶ 72                              B. This Case

¶ 73                    1. *The Proper Time Frame for Changed Conditions*

¶ 74    Respondent first argues that the trial court applied the wrong standard when it granted the State's motion for a finding of no probable cause. Respondent asserts that the burden he was required to meet to establish probable cause was "a plausible account of evidence that the committed individual has demonstrated change since the time of their initial commitment."

¶ 75    In support of his claim, respondent quotes the Illinois Supreme Court in *Stanbridge*, 2012 IL 112337, ¶ 87, in which it wrote, "We further hold that based upon the relevant elements applicable to these proceedings, the legislature intended that to present a plausible account, the committed individual bears the burden to present sufficient evidence that demonstrates a change in the circumstances that led to the initial commitment." Emphasizing the phrase "that led to the initial commitment" (*id.*), respondent contends that the trial court erred by not giving any weight or consideration to his circumstances at the time of his initial commitment. Applying this standard, respondent argues he made a more than plausible showing of a change such that he should have been granted an evidentiary hearing before a jury.

¶ 76    However, contrary to respondent's claim, the rule he gleans from *Stanbridge* is not

applicable here because subsequent amendments to section 65 of the Act have specified the proper period of comparison, which *Stanbridge* itself recognized. See *id.* ¶ 49 n.2; *id.* ¶¶ 51-52 nn.3-4; see also *id.* ¶ 67 ("[W]e stress that our consideration of this issue is dependent upon the relevant statutory scheme at the time of these proceedings only, and does not address the scope of postcommitment proceedings under subsequent amendments."). Section 65(b)(1) explicitly states that the trial court is to determine "whether facts exist to believe that *since the most recent periodic reexamination* (or initial commitment, if there has not yet been a periodic reexamination), the condition of the committed person has so changed that he or she is no longer a sexually violent person." (Emphasis added.) 725 ILCS 207/65(b)(1) (West 2024); see *In re Commitment of Tittelbach*, 2018 IL App (2d) 170304, ¶ 31 ("[S]ection 65(b)(1) of the Act *** plainly limits the trial court's inquiry to the change in the committed person's condition 'since the most recent periodic reexamination.' " (quoting 725 ILCS 207/65(b)(1) (West 2016))).

¶ 77     The trial court in the present case applied this precise standard at the probable cause hearing. Accordingly, respondent's claim to the contrary is without merit.

¶ 78     In addition, we note that respondent did not argue at the probable cause hearing that he had made sufficient progress since his initial commitment. In his brief to this court, respondent describes the expert testimony and reports at his initial commitment proceedings. However, respondent never addressed this evidence with the trial court or asked the court to consider it, despite asking the court to consider other evidence from the periods before the 2024 reexamination report.

¶ 79     Notwithstanding the foregoing, we further note that, as the reexamination reports in this case demonstrate, the experts' evaluations take a respondent's entire history of treatment into account. See *In re Commitment of Rendon*, 2017 IL App (1st) 153201, ¶ 23 ("[R]eview of a

reexamination report does not preclude consideration of a respondent's full mental health and sexual history or relevant historical facts.").

¶ 80                              2. *The Trial Court's Finding of No Probable Cause*

¶ 81           Having identified the correct standard for the trial court to use in assessing respondent's motion, we turn to his argument that he made a sufficient showing of a change in circumstances to establish probable cause that he was no longer an SVP and the court erred by not granting an evidentiary hearing on the matter.

¶ 82           Respondent concedes that he has a mental disorder but argues that he is no longer dangerous to others because his mental disorder no longer creates a substantial probability that he will engage in acts of sexual violence. Further, respondent asserts that his advanced age and progress in treatment constitute substantial changes that reduce his risk of reoffending. Specifically, respondent points to (1) the scientific studies discussed in Rosell's report as well as (2) both Dees's and Rosell's testimony at the December 2024 hearing, opining that the risk of reoffending decreases dramatically past the age of 60.

¶ 83           The State responds that the trial court's finding was correct because respondent presented no evidence in support of his position. The State points out that (1) the only things the court was to consider at the probable cause hearing were (a) the reexamination reports and (b) the arguments of the parties and (2) the only reexamination report before the court was Dees's 2024 reexamination report. The 2024 reexamination report expressly considered and addressed respondent's arguments regarding his advanced age and treatment progress and nonetheless concluded that respondent remained an SVP in need of secure care. Even if the court were permitted to consider Rosell's evaluation report, Rosell offered no opinion on whether respondent remained an SVP and opined only that he was ready for conditional release, which is not at issue

at a probable cause hearing under section 65(b)(1).

¶ 84 We agree with the State that the trial court's finding was correct.

¶ 85 a. Respondent's Advanced Age

¶ 86 Regarding his advanced age, respondent compares this case to *In re Commitment of Wilcoxen*, 2016 IL App (3d) 140359, ¶ 49, in which the Third District reversed a trial court's finding of no probable cause, in part, because the respondent's age of 61 and scholarly findings of decreased recidivism in offenders over 60 provided a "plausible account" that he was no longer an SVP. However, respondent's reliance on *Wilcoxen* is mistaken because, unlike the present case, the other evidence in that case supported the application of the scholarly findings to the respondent. *Id.* ¶¶ 45, 49. Specifically, the respondent presented extensive evidence of his (1) progress in treatment, (2) changes in attitude toward treatment, and (3) low risk assessment scores that combined to make the necessary showing of probable cause. *Id.* ¶¶ 39-49. In other words, the respondent's progress in other areas supported the conclusion that his advanced age would result in a substantially lower risk to reoffend. Respondent in the present case does not have similar evidence in support of probable cause.

¶ 87 Moreover, the scholarly findings discussed in *Wilcoxen* were newly published and constituted a change from the generally accepted understanding of the psychological field since the respondent was committed several years prior to the probable cause hearing, which was the first such hearing since his commitment. *Id.* ¶¶ 4-6. In contrast, the decreased recidivism risk for offenders older than 60 has been well known and discussed in prior reexaminations of respondent in the present case.

¶ 88 Although Dees acknowledged in her 2024 reexamination report that respondent's being 61 years old was a protective factor in his favor, given the scientific research showing that

only 5% of sex offenders "have been detected committing a sexual offense over the age of 60" and that the predicted recidivism rate at age 70 is essentially zero, she concluded that respondent remained substantially probable to engage in future acts of sexual violence. Rosell and Dees testified to the same at the December 2024 hearing on respondent's conditional release. The trial court found that Dees's testimony was more credible than Rosell's testimony and, based on that testimony, found that there was no probable cause. Further, the record shows that respondent's age had been explicitly considered in the prior reexamination proceedings, which addressed respondent's condition and treatment progress from 2022 to 2023. Dees's opinion regarding respondent's age did not change, and respondent offers nothing new or different to suggest that his turning a year older—60 years old to 61 years old—was accompanied by changes in his attitudes, beliefs, and behaviors.

¶ 89        Ultimately, aging alone does not require a trial court to find probable cause for an evidentiary hearing of a respondent's status as an SVP. See *Tittelbach*, 2018 IL App (2d) 170304, ¶ 39 ("[A]lthough respondent was approximately one year older than he had been at the time of the previous report, this was not sufficient to show a change in his condition. Since respondent was unfit for discharge at age 67, it was implausible that, other things being equal, he was fit at age 68."). The mere fact that respondent is now 61 is not sufficient evidence, on its own, to warrant an evidentiary hearing under the circumstances in this case. See *id.* ("Even granting that there is a linear relationship between increasing age and decreasing risk, and that at some point [the] respondent's age alone might mean that he is no longer a substantial threat to reoffend, we see no reason to suspect that the year between 2015 and 2016 was the proverbial straw that broke the camel's back.").

¶ 90                                b. Respondent's Progress in Treatment

- 22 -

¶ 91    Regarding progress in treatment, respondent points to his advancement to phase III of treatment, which is further than the respondent in *Wilcoxen* advanced. Additionally, he highlights his recent positive progress notes, which describe him as an attentive and willing participant who actively engages with the material and continues to show growing insight.

¶ 92    However, as we mentioned previously, respondent in this case is unlike the respondent in *Wilcoxen*. Although Wilcoxen was only in phase I of treatment, the appellate court noted his progress notes showed he "understood how to recognize, correct, and avoid situations that put him at risk to offend, and he understood he had a support network that included his sister and brother-in-law." *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 39. In addition, Wilcoxen had been an active and willing participant in treatment, engaging in all treatment opportunities and completing all assignments, since he began treatment some four years prior. *Id.* ¶ 41. The appellate court noted that Wilcoxen had refused sex offender treatment when he was in prison and prior to his being committed; accordingly, the respondent's commitment to treatment and ownership of his prior offenses and misconduct demonstrated that his attitudes had truly changed while he had been completing treatment programs. *Id.* ¶ 43.

¶ 93    In contrast, Dees specifically cited respondent's lack of understanding of his sex assault cycle and interventions for sexual deviance that underly a relapse prevention plan as the reasons why his treatment progress was not a protective factor, despite respondent's making strides in treatment. Although ostensibly in treatment since his commitment in 1998, respondent had been inconsistent in his participation in treatment before he began making progress in the last few years. Regarding attitudes toward treatment, Dees noted in her report that "[respondent]'s motivation to change continues to be unclear. While he continues to attend treatment, his motivation appears directly related to being released rather than any real desire to change." The 2023 reexamination

report contained several statements from respondent expressing his frustration with the treatment programs and process and stating his belief that he was alone and passing time waiting to die. According to the treatment notes, respondent had missed many treatment sessions due to complications and pain from a recent shoulder surgery.

¶ 94 Respondent's reliance on *Rendon*, 2017 IL App (1st) 153201, is also misplaced. He argues that the respondent in that case was similarly situated to respondent in this case because he was "older and had advanced more in treatment than the Respondent in *Wilcoxen*." However, as the State points out, the respondent in *Rendon* was in phase V of treatment and, more importantly, had already been on conditional release for several years. *Id.* ¶ 32. In addition, the respondent in *Rendon* had the lowest possible score on the Static-99R and was 68 years old. *Id.* ¶¶ 12, 32. In the present case, respondent has never been on conditional release, is in phase III of treatment, scored in the above average to well above average categories on the Static assessments, and is 61 years old. In short, he is very dissimilar to the respondent in *Rendon* and has not made a sufficient showing to be entitled to an evidentiary hearing.

¶ 95 In summary, in our *de novo* review, we agree with the trial court's determination that respondent failed to present a plausible account of a change in circumstances, such that he was no longer substantially probable to engage in acts of sexual violence, and no probable cause existed to support an evidentiary hearing. The 2024 reexamination report clearly addressed the two minimal changes respondent relies upon—namely, his turning 61 years old and continuing in treatment for an additional year—and discussed why those changes were insufficient to overcome respondent's significant risk factors and likelihood of reoffending. And it is worth noting that the trial court had just conducted an evidentiary hearing on the issue of conditional release three months prior, in December 2024, at which respondent's expert testified and advanced identical

arguments, which the court rejected. Accordingly, we likewise conclude that no probable cause existed for an evidentiary hearing under section 65(b)(2) of the Act and affirm the trial court's judgment.

¶ 96                                 III. CONCLUSION

¶ 97         For the reasons stated, we affirm the trial court's judgment.

¶ 98         Affirmed.

*In re Detention of Morris*, 2026 IL App (4th) 250384

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cass County, No. 98-MR-17; the Hon. Timothy J. Wessel, Judge, presiding. |
| **Attorneys for Appellant:** | Jason R. Vincent, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Elizabeth A. Bays, Assistant Attorneys General, of counsel), for appellee. |